**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

NANCY MARKS,

      Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS,
JEFFERSON COUNTY CORRECTIONS BOARD,
INTERVENTION COMMUNITY CORRECTIONS SERVICES,
SUSAN KELLER, Community Parole Officer, Colorado Department of Correction, in her individual and official capacities;
KRISTIN HEATH, Program Director, Intervention Community Corrections Services, in her individual and official capacities;
RICK RAEMISCH, Executive Director Colorado Department of Corrections, in his individual and official capacities,

      Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

      Plaintiff, by and through her attorneys, David A. Lane and Nicole B. Godfrey of

KILLMER, LANE & NEWMAN, LLP, hereby brings this Complaint against the Colorado

Department of Corrections ("CDOC"), the Jefferson County Corrections Board ("JCCB"),

Intervention Community Corrections Services ("ICCS"), Susan Keller, and Kristin Heath:

**INTRODUCTION**

      1.     Nancy Marks is a prisoner in the Denver Women's Correctional Facility today for

one reason only: she is disabled. Ms. Marks suffers from spinal stenosis, which severely limits

her ability to walk and requires that she use a wheelchair. In November 2012, Ms. Marks was a model prisoner who dutifully completed her prison programming and had received no serious disciplinary infractions.  As a reward for her exceptionally good behavior, she was accepted into Colorado's community corrections program (Comm Corr) by Defendants CDOC, JCCB, and ICCS. She had much greater freedom in the Comm Corr residential facility than any inmate experiences in prison, as it is a community living environment and not a prison.  Two weeks after Ms. Marks arrived at the ICCS residential facility in Jefferson County, Colorado, she took a terrible fall in the facility's bathroom. This fall further exacerbated her medical condition, which led her doctor to recommend that she apply for disability benefits.  Solely because of her disability, Defendants CDOC, JCCB, ICCS, Keller, and Heath sent Ms. Marks back to prison, where she remains today. In the letter sent by Defendant Heath to Defendant Keller, instructing Ms. Keller to regress Ms. Marks back to prison, Defendants Heath and ICCS state: "…ICCS has rejected placement for acceptance as her medical condition no longer make her appropriate to remain in the ICCS residential program." Thus, only one factor drove Defendants' decision to remove Ms. Marks from Colorado's community corrections program and re-incarcerate her in the highest-security women's prison in the state of Colorado: her disability.

2.      Almost twenty-four years after the enactment of the Americans with Disabilities Act ("ADA"), CDOC, JCCB, and ICCS discriminate against people with disabilities like Ms. Marks by summarily rejecting and regressing them from community corrections programs and by refusing to provide accommodations and modifications to policies, procedures, and practices that would allow people with disabilities to fully participate in Colorado's community corrections programs.

3. On July 26, 1990, then President George H.W. Bush signed the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, into law, establishing the most important civil rights law for people with disabilities in our country's history.

4. One of the primary purposes of the ADA is to ensure that people with disabilities are not excluded from access to programs, services, and activities offered by public entities such as the CDOC and JCCB solely on the basis of their disability.

5. Another primary purpose of the ADA is to ensure that people with disabilities receive accommodations to participate in the programs, services and activities, offered by public entities like CDOC and JCCB.

6. The ADA also prohibits public accommodations, like the residential program operated by ICCS in Jefferson County, Colorado, from providing individuals who use wheelchairs for mobility with separate or unequal benefits or services.

7. Section 504 of the Rehabilitation Act of 1973 guarantees that people with disabilities will not be excluded from participating in any program or activity, solely on the basis of their disability, by any entity that receives federal financial assistance.

8. On information and belief, CDOC, JCCB, and ICCS receive federal funding for the operation of Colorado's community corrections programs.

**JURISDICTION AND VENUE**

9. This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and 42 U.S.C. § 1983, 29 U.S.C. § 794 and 42 U.S.C. § 12101, *et seq.* Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§

1331 and 1343, 42 U.S.C. § 1988, as amended by the Civil Rights Attorney Fee Award Act of 1976, 29 U.S.C. § 626(c)(1), and 28 U.S.C. §§ 1367(a) and 2201.

10.     Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b), as all of the events giving rise to the claims herein occurred in the District of Colorado.

## PARTIES

11.     Plaintiff Nancy Marks ("Ms. Marks"), at all times relevant to this complaint, is and was a resident of the State of Colorado and in the custody or supervision of the Colorado Department of Corrections. Ms. Marks is substantially limited in the major life activity of walking and uses a manual wheelchair for mobility.

12.     Defendant Colorado Department of Corrections ("CDOC") is a department of the State of Colorado. As such, Defendant CDOC is a public entity as that term is used in title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. Defendant CDOC is also a recipient of federal financial assistance as that term is used in section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Defendant CDOC is responsible for supervising all persons incarcerated in Colorado's prisons, all persons serving a term of parole in Colorado, and all persons referred to and serving a criminal sentence in the state of Colorado's community corrections program.

13.     Defendant Jefferson County Corrections Board ("JCCB") is a department of Jefferson County, Colorado. As such, Defendant JCCB is a public entity as that term is used in title II of the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq*. On information and belief, Defendant JCCB is a recipient of federal financial assistance as that term is used in section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  Defendant JCCB is responsible for approving or disapproving of all CDOC referrals to and regressions from Colorado's community

corrections program in Jefferson County. Defendant JCCB is also responsible for contracting with community corrections service providers like Defendant Intervention Community Corrections Services for residential services. Defendant JCCB's official policies, practices, and/or procedures caused the deprivation of Plaintiffs' constitutional rights.

14.     Defendant Intervention Community Corrections Services (ICCS) is a non-profit organization incorporated under the laws of the State of Colorado and performing the traditionally state governmental function of operating a residential rehabilitation program for former prisoners transitioning back into the community through contractual relationships with Jefferson County, Colorado, and the State of Colorado. Defendant ICCS' mission is to provide a cost-effective alternative to incarceration, in a safe environment, with the aim of reducing criminal behavior through the provision of supervision and services to the Colorado community. ICCS operates a residential facility in Jefferson County that has the capacity to house two-hundred ninety-five (295) persons serving criminal sentences in Colorado's community corrections program. As such, the deprivation of Plaintiff's constitutional rights was caused by a rule of conduct imposed by the State of Colorado  and Jefferson County, Colorado, or persons for whom the State and County were responsible; the State of Colorado and Jefferson County, Colorado, exercised coercive power or provided such significant encouragement, either over or covert, that Defendant ICCS' actions described herein must in law be deemed to be those of the State; and the State of Colorado and Jefferson County, Colorado, so far insinuated itself into a position of interdependence with ICCS that it must be recognized as a joint participant in the deprivation of Plaintiff's constitutional rights described herein. On information and belief,

Defendant ICCS is also a recipient of federal financial assistance as that term is used in section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

15.     Defendant Susan Keller is a Community Parole Officer in the Colorado Department of Corrections. On information and belief, Defendant Keller was the Community Parole Officer responsible for Ms. Marks' supervision from December 7, 2012 to January 25, 2013 when Ms. Marks was a resident of the ICCS residential facility in Jefferson County, Colorado. At all times relevant to this complaint, Ms. Keller was acting under color of state law. Ms. Keller is sued in her official and individual capacities.

16.     Defendant Kristin Heath is the Program Director of the ICCS residential facility in Jefferson County, Colorado. Ms. Heath made the decision to regress Ms. Marks from community corrections back to CDOC because of Ms. Marks' disability, and this action was made under color of state law. Ms. Heath is sued in her official and individual capacities.

17.     Defendant Rick Raemisch is the Executive Director of the Colorado Department of Corrections.  As such, he sets all policies for the DOC.  He was personally notified by letter in April of 2014 that Ms. Marks rights were being violated as outlined in this Complaint, and has done nothing to stop the ongoing violation of Plaintiff's constitutional and statutory rights.

## FACTUAL ALLEGATIONS

**Ms. Marks' Disability**

18.     In December 2011, in the midst of the criminal trial that led to her incarceration in the Colorado Department of Corrections, Ms. Marks was in a serious car accident that caused severe spinal trauma.

19.     When Ms. Marks arrived in the custody of Defendant Colorado Department of Corrections ("CDOC") in early 2012, she required the assistance of a walker to move around her assigned facility, the Denver Women's Correctional Facility ("DWCF").

20.     In late April 2012, Ms. Marks was transferred from DWCF to La Vista Correctional Facility ("LVCF").

21.     Over the course of the next several months at La Vista, Ms. Marks' spinal condition deteriorated such that it became increasingly difficult for her to move around with only the walker for assistance.

22.     On or around September 24, 2012, Defendant CDOC recognized that Ms. Marks fell into the class of persons with a mobility disability and approved Ms. Marks request for a wheelchair.

23.     From September 24, 2012 to December 7, 2012, Ms. Marks was able to use either her walker or wheelchair to move around LVCF. Ms. Marks used her walker for shorter distances and used her wheelchair for longer distances.

24.     On December 7, 2012, Ms. Marks entered Defendant Intervention Community Corrections Services ("ICCS") residential program. For the first several weeks in the program, Ms. Marks used her walker to move around the facility.

25.     Due to injuries sustained after falling at Defendant ICCS' Jefferson County residential facility on December 22, 2012, Ms. Marks conditions began and continues to deteriorate such that she requires the use of a wheelchair at all times.

**Colorado's Community Corrections Program**

26.     The Colorado legislature has created a system whereby Defendant CDOC works with local units of government to establish and maintain community corrections programs that allow prisoners sentenced to a term of imprisonment in CDOC to serve all or part of that term in community-based correctional programs outside of the prison walls, *see* C.R.S. § 17-27-101, *et seq*.

27.     Defendant's CDOC regulations require that prisoners who have not been convicted of a violent offense to be electronically referred by their case manager to "Adult Parole and Community Corrections" nineteen (19) months prior to their estimated Parole Eligibility Date ("PED"), so long as the prisoner has demonstrated acceptable institutional behavior.

28.     A prisoner's case manager is responsible for submitting a prisoner's community corrections referral electronically via a "Community Release Form." Two weeks prior to submitting the community corrections referral, a prisoner's case manager must provide the prisoner a form that allows the prisoner to submit a letter to the community corrections board. The prisoner's letter must be scanned and e-mailed to the Adult Parole and Community Corrections referral coordinator at the time the referral is submitted.

29.     Once the referral coordinator receives the referral, it is her responsibility to forward it to the appropriate community corrections board or community corrections center. The appropriate board or center is determined by the prisoner's intended parole destination, whether the prisoner qualifies for specialized programs, and whether another board or center has greater available bed space. Defendant Jefferson County Corrections Board ("JCCB") is responsible for

accepting or denying a prisoner's placement in community corrections in Jefferson County, Colorado.

30.     Once a community corrections board or center receives a referral, it is responsible for reviewing the "Community Release Form" and the prisoner's letter. Upon review, the community corrections board or center will make a decision to accept or deny the prisoner's placement in community corrections.

31.     If a prisoner's community corrections referral is rejected, the prisoner can be re-referred every six months at the discretion of the prisoner's case manager if six months have passed since the most recent prior referral, the prisoner continues to display acceptable institutional behavior, and the prisoner has demonstrated "significant changes." Defendant CDOC defines "significant changes" in its Administrative Regulation 250-03, *Community Corrections Referral and Placement Process*, as those that "could include accepted into a [C]DOC recommended specialized program, participation or completion of a program, or any other change that could improve the [prisoner's] chance of acceptance into a community placement facility."

32.     A person who is accepted into a community corrections program remains under the supervision of the Colorado Department of Corrections. Each person in community corrections is assigned a community parole officer, who is responsible for that person's supervision in the community, including responding to any attempted escape or other critical incident, making arrest, administering disciplinary procedures, and removing that person from the community, if necessary.

33.     Under Colorado law, C.R.S. §17-27-104(5), if a prisoner is accepted into a community corrections program and then subsequently regressed back to prison, the community corrections program shall provide an administrative review process for the regression if the referring agency does not provide such a process. Defendant CDOC's administrative review process is not available for classification decisions, including a prisoner's placement and retention in a community corrections program.

34.     Upon information and belief, Defendants JCCB and ICCS do not have an established administrative review process that notifies persons being regressed from ICCS and JCCB back to prison of the reasons for the regression, nor do Defendant JCCB and ICCS provide persons being regressed an opportunity to challenge the regression.

35.     If a prisoner is accepted into a community corrections program and then subsequently regressed back into prison, the prisoner can be re-referred to community corrections at the case manager's discretion so long as three months has passed and the prisoner maintains good institutional behavior.

**Ms. Marks' Placement in and Regression from Community Corrections**

36.     In approximately September 2012, Defendant CDOC referred Ms. Marks for placement in community corrections.

37.     On November 29, 2012, Defendants ICCS and JCCB accepted Ms. Marks for placement in the ICCS residential program in Jefferson County, Colorado.

38.     Ms. Marks was transferred out of prison and into the ICCS residential program on December 7, 2012.

39.     From December 7, 2012 to December 22, 2012, Ms. Marks used her walker to assist her movements around Defendant ICCS' facility.

40.     On December 22, 2012, Ms. Marks' fell in the bathroom of the ICCS' facility. Ms. Marks had been using her walker to move across the bathroom when she encountered a large puddle of water in the middle of the bathroom floor. When she reached the puddle, Ms. Marks' walker slipped out from her control. Without her walker, Ms. Marks was unable to hold herself up, and she slipped and fell, causing further pain in her back. Ms. Marks' was taken from Defendant ICCS' facility to St. Anthony's Hospital via ambulance.

41.     When Ms. Marks arrived at ICCS, she was in tremendous pain, and she requested to visit her doctor in Denver. Ms. Marks was initially told by Defendant ICCS' staff that she could visit the doctor only by bus or taxicab and that no family member could transport her to her doctor's office. Eventually, Defendant ICCS' staff relented and permitted a family member to drive her to see her doctor at Rocky Mountain Medical & Health Care.

42.     After this initial doctor's visit, Ms. Marks' doctor ordered a number of tests designed to assist him in formulating a treatment plan to restore some of Ms. Marks' mobility. Defendant ICCS' staff repeatedly refused to allow Ms. Marks to return to her doctor for these follow-up appointments and repeatedly denied receiving the faxed instructions from the doctor to ICCS regarding his directives that Ms. Marks be confined to bed rest and do no heavy lifting or physical labor.

43.     Throughout her stay at Defendant ICCS' residential facility, Ms. Marks was provided no reasonable accommodations to allow her to fulfill the program requirements and access the full benefits of the community corrections program. Instead, she was required to stand

and walk, use the elevator, and wait in line, three times a day, for medications, all against medical advice. She was also not permitted to have the medical mattress her doctor ordered.

44.     Ms. Marks was also repeatedly threatened by Defendant ICCS' staff that she would be regressed to Defendant CDOC prisons if she did not contravene medical orders and obtain immediate employment.

45.     Defendant ICCS' staff, including Defendant Heath, further advised her that if she sought disability benefits, as her doctor recommended that she do, she would be immediately regressed back to Defendant CDOC prisons.

46.     In mid-to-late January 2013, Ms. Marks received an offer of employment with Phase 5, Inc. in Boulder, Colorado. This job offer would have allowed Ms. Marks to work in an office answering phones and performing administrative tasks that would not require Ms. Marks to be on her feet all day, thus accommodating her disability.

47.     On January 23, 2013, Defendant Kristin Heath, Program Director for Defendant ICCS, received a letter from Ms. Marks' medical provider indicating that Ms. Marks must be placed on bed rest and advising that she apply for disability benefits.

48.     Upon receipt of this letter, Defendants Heath and ICCS immediately decided to send Ms. Marks back to prison. Defendant Heath wrote a letter to Defendant Keller, Ms. Marks' Community Parole Officer, listing Ms. Marks' disability and inability to do physical activity as the reason for her regression. Defendants Heath and ICCS determined that Ms. Marks would not be able to obtain employment because of her disability and medical conditions.

49.     In this letter, Defendants Heath and ICCS told Defendant Keller the following:

On January 23, 2013, ICCS received medical documentation indicating she is to be on bed rest indefinitely and advising that she should apply for disability

12

benefits. Six of the eleven Conditions of Placement require physical activity on the part of the client: one of the more important conditions is that she is employed at a phone location. [Ms.] Marks' medical conditions make it apparent that she will not be able to obtain employment in the foreseeable future, as is required by the ICCS residential program. Pursuant to C.R.S. 17-27-104(5), ICCS has rejected placement after acceptance as her medical conditions no longer make her appropriate to remain in the ICCS residential program.

50.    Upon information and belief, Defendant JCCB approved the decision of Defendants Heath and ICCS.

51.    Upon information and belief, Defendants Keller and CDOC did not take any steps to ensure that Ms. Marks not be returned to prison solely because of her disability. In fact, Defendants Keller and CDOC did just the opposite: they sent her back to prison solely because of her disability.

52.    Upon information and belief, Defendants Heath and ICCS disregarded Ms. Marks' representation that she received a job offer from Phase 5, Inc. when they regressed her back to prison.

53.    Ms. Marks was told of her regression back to prison on January 25, 2013, when two sheriff's deputies from the Jefferson County Sheriff's Office arrived at Defendant ICCS' residential facility to arrest her and bring her back to prison.

54.    Upon information and belief, Defendants Keller and CDOC effectuated Ms. Marks' January 25, 2013 arrest pursuant to their duty to maintain supervision over persons placed into community corrections from a CDOC facility.

55.    By January 29, 2013, Ms. Marks was re-incarcerated at DWCF, where she remains today.

56. Ms. Marks was given no notice of the reasons for her regression, and she was afforded no opportunity to challenge her regression.

**Ms. Marks Re-Incarceration in CDOC**

57. In the 16-months since Ms. Marks has been re-incarcerated at DWCF, her medical conditions have rapidly deteriorated. She is not receiving physical therapy, and she must use a wheelchair at all times.

58. Because Ms. Marks is confined to a wheelchair, she is given the assistance of an "Offender Care Aide," or "OCA." On December 20, 2013, Ms. Marks' then-OCA, a convicted sex offender, inappropriately touched her neck, back and breast in a sexual manner. Ms. Marks reported this behavior, and she now has a new OCA. On information and belief, her prior-OCA was never punished for inappropriately touching Ms. Marks.

59. In the past 16-months, Ms. Marks has repeatedly requested that her CDOC case manager re-refer her for community corrections. Upon information and belief, Ms. Marks' CDOC case manager has repeatedly denied her request for a new referral to community corrections, despite that Ms. Marks continues to meet the criteria for community corrections placement.

60. On April 21, 2014, undersigned counsel David A. Lane sent a letter to Defendant CDOC's Executive Director, Rick Raemisch, informing Defendant CDOC that Ms. Marks' regression was in violation of her rights under the Americans with Disabilities Act and requesting that Ms. Marks immediately be placed back in Colorado's community corrections

program. To date, neither Mr. Raemisch nor anyone from Defendant CDOC has responded to that letter or taken any other action in response thereto.

61. On April 24, 2014, CDOC Case Manager Traxler, the head of all CDOC case managers at DWCF, arrived at Ms. Marks' cell door and ordered her to sign a request for special needs parole and to write a letter explaining why she needed special needs parole. On May 12, 2014, Ms. Marks' case manager, Case Manager S. Risner, informed Ms. Marks that her special needs parole request had been denied.

62. Since Mr. Lane sent his letter on behalf of Ms. Marks to Defendant CDOC, Defendant CDOC staff members have been retaliating against Ms. Marks by instructing her not to file grievances and denying all of her pain medication.

63. Upon information and belief, Defendants CDOC, JCCB, and ICCS are refusing to re-refer and re-accept Ms. Marks into Colorado's community corrections program solely on the basis of her disability.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Violations of Section 504 of the Rehabilitation Act)**
**(Against Defendants CDOC, JCCB, ICCS, and All Individually Named Defendants in their Official Capacities)**

64. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

65. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), provides in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be

15

excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

66.     Defendants have discriminated against Plaintiff Marks on the basis of disability in violation of 29 U.S.C. § 794 and its implementing regulations as more fully described above. Such discrimination includes but is not limited to failure to provide reasonable modifications and accommodations to complete the community corrections program, the regression and exclusion of Plaintiff Marks from the community corrections program, and the failure to re-refer and re-accept Plaintiff Marks into the community corrections program, all solely on the basis of disability.

67.     Defendants have acted with deliberate indifference to the strong likelihood that pursuit of Defendant CDOC's, JCCB's, and ICCS' questioned policies, and failure to provide accommodations and modifications, would likely result in a violation of federally protected rights.

68.     Ms. Marks is an individual with a disability within the meaning of the Rehabiliation Act of 1973.

69.     Ms. Marks was qualified to participate in the services, programs, activities, and benefits provided to prisoners in the community corrections program at ICCS' residential facility in Jefferson County, Colorado, within the meaning of the Rehabiliation Act of 1973.

70.     CDOC, JCCB, and ICCS receive and benefit from federal financial assistance as that term is used in 29 U.S.C. § 794.

71.     CDOC, JCCB, and ICCS denied and are continuing to deny Ms. Marks access to programs, benefits and services provided to other prisoners and persons in the community

corrections program solely on the basis of her disability and for which she was qualified to participate, thereby violating the Rehabilitation Act of 1973.

72.     The Defendants excluded Ms. Marks from participation in their services, programs and activities, and have denied them the rights and benefits accorded to other prisoners and detainees, solely by reason of their disabilities in violation of Section 504. In addition, Defendants have violated Section 504 by intentionally failing or refusing to provide reasonable accommodations and modifications to their policies, practices, and procedures, to allow Ms. Marks the ability to fully participate in the community corrections program.

73.     Despite the clear provisions of the Rehabiliation Act of 1973, the Defendants persisted in imposing conditions and practices which discriminate against Ms. Marks and other persons who are disabled.

74.     As a direct and proximate result of the acts, omissions, and violations alleged above, Plaintiff has suffered damages, physical injuries, including but not limited to deterioration of her spinal condition, pain and suffering, inconvenience, emotional distress, and impairment of quality of life.

75.     Plaintiff has been injured and aggrieved by and will continue to be injured and aggrieved by Defendants' discrimination.

**SECOND CLAIM FOR RELIEF**
**(Violation of Title II of the Americans with Disabilities Act)**
**(Against Defendants CDOC, JCCB, and Keller in their Official Capacities)**

76.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

77.     The Americans with Disabilities Act (hereinafter referred to as the "ADA"), 42

U.S.C. §§ 12101 *et seq*., and specifically 42 U.S.C. §§ 12131-12134, prohibits discrimination in

public services on the basis of disability. 42 U.S.C. § 12132 provides:

> Subject the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

78.     The ADA defines a "public entity" to include any state or local government or

any department, agency, special purpose district, or other instrumentality of a State or local

government, 42 U.S.C. § 12131(1). CDOC and JCCB each are a "public entity" within the

meaning of the ADA.

79.     Ms. Marks has a physical impairment that substantially limits one or more of her

major life activities, and, thus, she is an individual with disabilities within the meaning of the

ADA, 42 U.S.C. § 12102(2).

80.     Ms. Marks, with or without reasonable modifications to rules, policies or

practices, met the essential eligibility requirements for the receipt of services or the participation

in programs or activities provided by the Defendants. Thus, Ms. Marks was a "qualified

individual with disabilities" within the meaning of the ADA, 42 U.S.C. § 12131(2).

81.     The Defendants excluded Ms. Marks from participation in their services,

programs and activities, and have denied her the rights and benefits accorded to other prisoners

and residents of the community corrections program, solely by reason of her disability in

violation of the ADA. In addition, Defendants have violated the ADA by intentionally failing or

refusing to provide reasonable accommodations and modifications to policies, practices and

procedures to Ms. Marks and other persons with disabilities.

82.     The Defendants have willfully disregarded their duties under the ADA and have knowingly allowed unlawful conditions and practices to continue in the community corrections program for prolonged and unreasonable periods of time.

83.     Despite the clear provisions of the ADA, the Defendants persist in imposing conditions and practices that discriminate against Ms. Marks and other persons with disabilities.

84.     As a direct and proximate result of the acts, omissions, and violations alleged above, Plaintiff has suffered damages, physical injuries, including but not limited to deterioration of her spinal condition, pain and suffering, inconvenience, emotional distress, and impairment of quality of life.

**THIRD CLAIM FOR RELIEF**
**(Violation of Title III of the Americans with Disabilities Act)**
**(Against Defendant ICCS)**

85.     Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

86.     ICCS residential facility in Jefferson County, Colorado, is a place of public accommodation under 42 U.S.C. § 12181(7)(e).

87.     Defendant ICCS is required to provide individuals who use wheelchairs full and equal enjoyment of their facility. 42 U.S.C. § 12182(a).

88.     Defendant ICCS is prohibited from denying individuals in wheelchairs the opportunity to participate in the programs at their facility. 42 U.S.C. § 12182(b)(1)(A)(i).

89.     Defendant ICCS is prohibited from enacting standards, criteria, or methods of administration that have the effect of discriminating against individuals with a disability. 42 U.S.C. § 12182(b)(1)(D).

90.     Defendant ICCS is prohibited from imposing eligibility criteria that have the effect of screening out persons with disabilities. 42 U.S.C. § 12182(b)(2)(A)(i).

91.     Defendant ICCS is required to make reasonable modifications to its policies, practices and procedures to ensure the full participation of persons with disabilities. 42. U.S.C. § 12182(b)(2)(A)(ii).

92.     Defendant ICCS's violation of Title III of the ADA includes but is not limited to: failure to provide individuals who use wheelchairs the full and equal enjoyment of their residential facility in Jefferson County, Colorado, because of their requirement that any resident engage in physical activity that individuals in wheelchairs are unable to meet; failure to provide individuals who use wheelchairs the ability to participate in all programs offered by ICCS; effectuation and implementation of standards, criteria, and methods of administration of their programs that discriminate against individuals in wheelchairs; imposition of eligibility criteria for ICCS programs that screen out individuals with disabilities, including individuals in wheelchairs; and failure to make reasonable modifications to ICCS policies, practices and procedures to afford individuals in wheelchairs, like Ms. Marks, the full and fair opportunity to participate in ICCS programs.

93.     Defendant ICCS has unlawfully discriminated against Ms. Marks and other persons with mobility disabilities and will continue to discriminate against Ms. Marks and other persons with mobility disabilities unless this Court enters an injunction prohibiting such discrimination.

94.     Ms. Marks was damaged by Defendant ICCS' discrimination and will continue to be damaged by ICCS' discrimination unless this Court orders them to comply.

## FOURTH CLAIM FOR RELIEF
### (42 U.S.C. § 1983 – Violation of Fourteenth Amendment – Due Process of Law)
### (Against All Individual Defendants in their Individual and Official Capacities)

95. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

96. Plaintiff has liberty interest in her placement in community corrections as such placement removes Plaintiff from prison, allows her to freely move about in the community, and requires an administrative review process under Colorado law, C.R.S. 17-27-104(5).

97. Under the Fourteenth Amendment to the United States Constitution, Ms. Marks may not be deprived of this liberty interest without due process of law.

98. Defendants Keller and Heath violated Ms. Marks right to due process by failing to provide her notice of the reasons for her regression and by failing to afford her an opportunity to contest the regression.

99. Plaintiff Marks had no opportunity to ensure that Defendants were considering the entirety of her record, including her job offer and the accommodations necessary due to her medical conditions.

100. As a direct and proximate result of Defendants failure to provide Ms. Marks with sufficient process when regressing her back to prison, Plaintiff has suffered damages, physical injuries, including but not limited to deterioration of her spinal condition, pain and suffering, inconvenience, emotional distress, and impairment of quality of life.

## FIFTH CLAIM FOR RELIEF
### (42 U.S.C. § 1983 – Violation of Fourteenth Amendment – Equal Protection)
### (Against All Individual Defendants in their Individual and Official Capacities)

101. Plaintiff hereby incorporates all other paragraphs in the Complaint as if fully set forth herein.

102. Ms. Marks is disabled.

103. Defendants Keller and Heath regressed Ms. Marks from the ICCS residential program back to prison solely on the basis of Ms. Mark's disability.

104. Defendants Keller and Heath discriminated against Ms. Marks because of her disability.

105. Defendants Keller and Heath provided no legitimate governmental purpose for discriminating against Ms. Marks.

106. Defendants' purported reason for regressing Ms. Marks was that she could not obtain employment, but Ms. Marks had received a job offer and was able to work.

107. As a direct and proximate result of Defendants discriminatory treatment, Ms. Marks has suffered damages, physical injuries, including but not limited to deterioration of her spinal condition, pain and suffering, inconvenience, emotional distress, and impairment of quality of life.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in their favor and against Defendants, and grant:

(a)     That this Court assume jurisdiction;

(b)     That This Court enter judgment in Plaintiff's favor and against Defendants, jointly and severally;

(c)     That this Court declare the actions of Defendants described in this Complaint to be in violation of Titles II and III of the Americans with Disabilities Act, Section 504 of the Rehabiliation Act, and the Constitution;

(d)     That this Court enter an injunction ordering Defendants to cease discrimination on the basis of disability in the administration of the community corrections program;

(e)     That the Court enter an injunction ordering Defendant CDOC to deliver Plaintiff back into the custody of ICCS;

(f)     That the Court enter an injunction ordering Defendants JCCB and ICCS to provide reasonable accommodations for Plaintiff's disability to allow her to enjoy the benefits of the community corrections program;

(g)     That this Court award Plaintiff compensatory damages were permitted by law;

(h)     That this Court award Plaintiff appropriate relief at law and equity;

(i)     That this Court grant declaratory judgment against the individually named Defendants in their official capacities and against the named entities, compensatory and consequential damages, including but not limited to damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering all claims by law in the amounts to be determined at trail against all Defendants, as allowed by law;

(j)     That this Court award Plaintiff punitive damages against individuals in their individual capacities on all federal claims allowed by law and in an amount to be determined at trial;

(k)     That this Court award Plaintiff all damages allowed at law;

(l)     That this Court award attorneys' fees and costs of this action, including expert witness fees, on all claims allowed by law;

(m)     That this Court award pre-judgment and post-judgment interest at the lawful rate; and

(n)     That this Court award such additional or alternative relief as may be just, proper and equitable.

PLAINTIFF REQUESTS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.

Dated this 4th day of June, 2014.

KILLMER, LANE & NEWMAN, LLP

_s/ David A. Lane_____
David A. Lane
Nicole B. Godfrey
KILLMER, LANE & NEWMAN, LLP
1543 Champa Street, Suite 400
Denver, Colorado 80202
(303) 571-1000
dlane@kln-law.com
ngodfrey@kln-law.com

ATTORNEYS FOR PLAINTIFF